UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CWIK,                                Case No. 10-15121

         Plaintiff,                         Marianne O. Battani
vs.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

         Defendant.
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 15)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On December 24, 2010, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Marianne O. Battani referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability and disability insurance benefits.  (Dkt. 3).  This matter is before the

Court on cross-motions for summary judgment.  (Dkt. 10, 15).

### B.    Administrative Proceedings

Plaintiff filed the instant claims on February 28, 2007, alleging that he

became unable to work on December 5, 2006.  (Dkt. 8-5, Pg ID 125).  The claim was initially disapproved by the Commissioner on May 18, 2007.  (Dkt. 8-4, Pg ID 93-97).  Plaintiff requested a hearing and on January 8, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) John S. Pope, who considered the case *de novo*.  In a decision dated February 3, 2009, the ALJ found that plaintiff was not disabled.  (Dkt. 8-2, Pg ID 40-58).  Plaintiff requested a review of this decision on February 25, 2009.  (Dkt. 8-2, Pg ID 35).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (Dkt. 8-2, Pg ID 30-31), the Appeals Council, on November 23, 2010, denied plaintiff's request for review.  (Dkt. 8-2, Pg ID 26-29).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

II.   **FACTUAL BACKGROUND**

A.   <u>ALJ Findings</u>

Plaintiff was 43 years of age at the time of the most recent administrative hearing.  (Dkt. 8-2, Pg ID 63).  Plaintiff's relevant work history included approximately 17 years as a hi-lo driver and a supervisor.  (Dkt. 8-6, Pg ID 143).  In denying plaintiff's claims, defendant Commissioner considered cervical spine fusion with right upper neuropathy and illiteracy as possible bases of disability.  (Dkt. 8-6, Pg ID 152).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since December 31, 2008.  (Dkt. 8-2, Pg ID 45).  At step two, the ALJ found that plaintiff's degenerative disc disease of the cervical spine; depression; and history of a learning disorder were "severe" within the meaning of the second sequential step.  *Id*.  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform his previous work as a material handler.  (Dkt. 8-2, Pg ID 57).  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  *Id.*

B.    <u>Plaintiff's Claims of Error</u>

Plaintiff asserts that the ALJ did not properly assess his complaints of disabling pain.  According to plaintiff's primary care physician, who performed a physical capacity assessment on October 7, 2008, plaintiff had decreased range of motion in his neck and cervical radiculitis.  Dr. Cooley indicated that plaintiff's prognosis was poor and he was not a malingerer.  His pain level was severe enough to interfere with attention and concentration needed to even perform simple tasks.  Dr. Cooley opined that plaintiff could not work an 8 hour day.  Dr. Cooley concluded on December 2, 2009 that plaintiff's condition was deteriorating and that he had intractable pain that impacted his ability to sustain concentration.

Plaintiff also asserts that there is not substantial evidence to support the ALJ's finding that he could perform work as an assembler, inspector and packer because of the documented difficulty with his right hand.  Plaintiff also says that he would be absent from work more than 2-3 days per month, which is work preclusive.  Further, the identified occupations require productivity throughout the day and plaintiff, due to his exertional and nonexertional limitations, cannot maintain such production.

Plaintiff objects to the hypothetical question posed to the vocational expert because it did not include his right upper extremity symptoms or limitations and

failed to mention his documented neck motion limitations.  In addition, plaintiff

contends that the ALJ made a finding that he had moderate difficulties in

concentration, persistence, or pace, but failed to adequately account for this

limitation in the hypothetical question.

      C.      <u>Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, the ALJ's RFC is supported by substantial

evidence in the form of at least three medical opinions.  First, state agency

physician Dr. Mian opined that plaintiff could do light work, including lifting 10

pounds frequently and 20 pounds occasionally.  (Tr. 318).  The only other

limitations noted by Dr. Mian involved balancing, stooping, kneeling, crouching,

and crawling.  (Tr. 319).  Second, orthopedic surgeon Dr. Jeffrey Lawley also gave

an opinion consistent with lifting 20 pounds, which is consistent with light work.

(Tr. 329).  During a medical examination conducted at the request of plaintiff's

workers' compensation counsel, Dr. Gordon indicated a more restricted range of

work than Dr. Mian or Lawley: 10-15 pounds of lifting from the waist level only

and only 3-4 times per hour.  (Tr. 335).  Additionally, vigorous pushing, pulling,

and carrying out activities above shoulder level were to be avoided.  (Tr. 335).

According to the Commissioner, even though Dr. Gordon indicated a more

restricted functional capacity than either the state agency doctor or the other

independent medical examiner, the ALJ mostly accepted his limitations.  (Tr.

21).  The ALJ limited above-shoulder work to occasional.  The Commissioner

asserts that this was a reasonable finding given that Dr. Mian explicitly found no

manipulative limitations, including reaching overhead.  (Tr. 319).  Dr. Lawley did

not include a limitation on above-shoulder work either.  (Tr. 329).  The

Commissioner contends that a limitation to occasional overhead work was a

reasonable reconciliation of the differing opinions.  Moreover, the Commissioner

argues that these opinions were consistent with Dr. Bono's statement in April

2007 that plaintiff "may start returning to work."  (Tr. 387).

In addition, the Commissioner asserts that the medical records support the

ALJ's findings.  While the Commissioner acknowledges that plaintiff had a major

surgical procedure done in December 2006, the records indicate he improved

shortly thereafter.  X-rays taken in January and February indicated a normal fusion

(Tr. 177, 180).  Dr. Bono's follow-up in January 2007 found plaintiff "doing very

well" with no sensory or motor deficits, no tenderness, and full range of motion.

(Tr. 209).  The next month, Dr. Bono found no abnormalities and commented that

the hardware placement was "excellent."  (Tr. 300).  Findings were also good

in April.  (Tr. 387).  An MRI showed mild stenosis and mild foraminal narrowing,

but no involvement of the cord or nerve root.  (Tr. 207).  In April, Dr. Bono

reviewed this result and told plaintiff to wean off his Vicodin, stating that the refill

given that month would be one of the last.  (Tr. 386-87).  Consultative examiner

Dr. Shelby-Lane found only "mild" tenderness and "slightly decreased" range of motion.  (Tr. 309).  Reflexes were normal.  (Tr. 313).  An orthopedic surgeon, Dr. Lawley, documented normal neurological exam findings with no muscle spasm. (Tr. 328).  A physiatrist, Dr. Gordon, found normal sensation except for a "spotty" loss of sensation in the right arm which did not follow dermatonal patterns.  (Tr. 333).  No pathological reflexes were found.  (Tr. 333).  Dr. Gordon recommended conservative care, specifically anti-inflammatories, physical therapy, and exercise. (Tr. 335).

Although plaintiff claimed to have problems performing some physical maneuvers with the consultative examiner, it is not clear why his impairment could cause these limitations (e.g., limited ability to squat).  (Tr. 309).  While the orthopedic surgeon noted "markedly decreased" range of motion due to complaints of pain  (Tr. 328), the consultative examiner had obtained much greater range of motion the previous month, and, according to the Commissioner, the orthopedic surgeon's report was based on plaintiff's reporting of pain rather than an actual inability to move further.  (Tr. 328).  Physiatrist Dr. Gordon also noted some reduced range of motion with pain complaints.  But the Commissioner says that these findings, too, were inconsistent with those of the orthopedic surgeon. For example, he found flexion at 35 degrees, while the orthopedic surgeon had only found 15 degrees.  (Tr. 328, 333).  While the orthopedic surgeon found

7

side rotation of only 10 degrees bilaterally, the physiatrist found 45 degrees on the left and 30 on the right. (Tr.328, 333). Notably, the physiatrist's examination was conducted exactly one week after the orthopedic surgeon's examination. (Tr. 325, 331). A pain medicine doctor found a few abnormal signs, but also full muscle strength and only mild tenderness. (Tr. 378). Like the other doctors before him, the pain specialist recommended conservative care, here injections. (Tr. 378). A CAT scan and X-ray showed that plaintiff's postfusion status was "unremarkable" and "stable." (Tr. 370, 373). A neurosurgeon from Dr. Bono's practice gave plaintiff a TENS unit, a muscle relaxant, a steroid pack, and Motrin and told him to return as needed. (Tr. 367). The Commissioner contends that this shows plaintiff's history of conservative treatment and moderate findings by various specialists.

According to the Commissioner, the ALJ also made explicit findings that supported his conclusion that plaintiff was less than credible. For instance, the medical evidence demonstrated plaintiff's frequent use of alcohol, but Plaintiff either denied or minimized his alcohol use at some examinations. (Tr. 29). He was also inconsistent in stating whether heat made his pain better or worse. (Tr. 29). His allegation that Vicodin made him drowsy was unsupported by the record, and there is no indication that he discussed alternative treatments with his doctors despite the alleged severe drowsiness. (Tr. 29). Finally, the ALJ observed that

plaintiff testified that he needed a cane and walker at times, but there is no record of cane or walker use in any medical record. (Tr. 30). The ALJ determined that plaintiff "may be attempting to portray limitations that are not actually present in order to increase the chance of obtaining benefits." (Tr. 30). The Commissioner contends that the ALJ could reasonably consider plaintiff's inconsistencies in analyzing his subjective complaints and in testing which plaintiff could influence (like range of motion or strength assessments, which rely on the patient giving maximum effort). Moreover, while plaintiff's primary care doctor (Dr. Cooley) filled out a form indicating plaintiff had more severe restrictions, the ALJ was not required to credit that form given the contrary views of Doctors Mian, Gordon, Shelby-Lane, Bono, and Lawley.

The record also indicates that Dr. Cooley treated plaintiff primarily for general internal medicine ailments, such as an ear infection, alcohol use, and hypertension. (Tr. 355-56). In August 2007, Dr. Cooley renewed various medications, but none of them were for pain. (Tr. 369). In September, he told plaintiff that he could take Vicodin "only at bedtime." (Tr. 362). In November, he refilled Vicodin, but wrote that plaintiff was "to use this only in severe emergencies." (Tr. 360). In April, he gave plaintiff 40 Vicodin pills. (Tr. 354). According to the Commissioner, the ALJ was entitled to consider that the treatment provided by Dr. Cooley did not match up with the extreme limitations he

imposed on plaintiff (such as being able to sit less than 2 hours a day and "rarely" being able to lift even less than 10 pounds). (Tr. 339-40). Dr. Cooley's opinion is also inherently contradictory - for instance, he wrote that plaintiff could only walk one block (Tr. 339), but also claimed that plaintiff would need to walk for 15 minutes out of every 45. (Tr. 340). Although Dr. Cooley's opinion was written later than the other opinions in the record, the Commissioner asserts that plaintiff has pointed to no objective medical evidence which indicated plaintiff's condition had worsened. To the contrary, a thorough exam by neurosurgeon Dr. Claybrooks in September 2008 demonstrated only reduced range of motion and trapezius spasm and normal motor strength, reflexes, senses, and special tests, along with normal posture and local tenderness. (Tr. 344).

The Commissioner argues that is simply wrong that the ALJ failed to impose limitations on the use of his neck and shoulders, given that the ALJ imposed restrictions on above-shoulder work and stated that lifting could only be up to waist level and could only occur a few times per hour. (Tr. 60). The Commissioner acknowledges that the ALJ did not place an explicit restriction on head movement, however, neither Dr. Gordon nor the state agency physician imposed such a limit, and plaintiff's treating surgeon never told him that he should avoid using his neck. While Dr. Lawley recommended limited use of the neck, the record shows that Dr. Lawley inexplicably obtained much more limited

range-of-motion findings than the other doctors.  The Commissioner contends that the ALJ was not required to credit Dr. Lawley's opinion, where that opinion was based on medical findings inconsistent with those of other doctors.  This is particularly true when the ALJ made an explicit finding, supported by several inconsistencies in the record, that plaintiff may have been exaggerating his complaints to secure disability.  (Tr. 29-30).  The Commissioner points out that Dr. Lawley found sharply limited range of motion due to plaintiff's subjective complaints of pain (Tr. 328), complaints the ALJ could view skeptically in light of the inexplicably better results Dr. Gordon obtained only one week later and plaintiff's reduced credibility in a context in which he had an incentive to exaggerate his limitations.

The Commissioner asserts that the ALJ properly found that plaintiff had moderate limitations in concentration, persistence, or pace, such that he was able to timely and appropriately complete tasks associated with simple and unskilled (but not detailed or complex) work.  (Tr. 21).  According to the Commissioner, plaintiff does not attempt to demonstrate how the medical evidence is inconsistent with the ALJ's finding.  Instead, plaintiff argues that a moderate limitation on concentration, persistence, or pace automatically requires more than a limitation to simple, repetitive tasks.  The Commissioner points out that the limitations required in the residual functional capacity hinge on the facts of the case at hand: "There

may be cases where . . . moderate limitations preclude the performance of even some simple, unskilled tasks.  Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace." *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375 (E.D. Mich. 2010).  The Commissioner points out that, here, plaintiff scarcely discusses the medical evidence concerning his mental impairment at all, presumably because the paucity of that evidence supports the Commissioner's decision.  As for plaintiff's depression, the ALJ recognized the treatment history with Dr. Cooley.  (Tr. 31).  However, he also noted that "medical records reveal that the medications have been relatively effective in controlling [plaintiff's] symptoms."  (Tr. 31).  The ALJ further noted that Dr. Cooley had never referred plaintiff to a psychiatrist or psychologist, and plaintiff had never sought such a referral.  (Tr. 31).  The ALJ also noted the consultative examiner's report, in which the examiner found plaintiff friendly and courteous, and noted his report of being respectful to authorities.  (Tr. 303).  Plaintiff had normal thought processes, and the mental status examination was fairly normal on the whole except for calculations.  (Tr. 304-05).  Plaintiff was "somewhat anxious and worried," and reported "transient depression."  (Tr. 304).  He appeared "somewhat anxious and apprehensive" but had a full and congruent affect objectively.  (Tr. 304).  In the view of the

Commissioner, the consultative examiner's use of modifiers like "somewhat" and "transient" is consistent with the ALJ's finding that plaintiff was not so impaired as to be unable to engage in simple, repetitive work.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

      If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

   "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

   If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis</u>

The ALJ concluded that, with regard to concentration, persistence, or pace, plaintiff has moderate difficulties.  He has an 8th grade education and a reported history of a learning disorder.  The ALJ further concluded that while plaintiff was able to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in simple and unskilled work, he was not capable of working in a detailed or complex work setting.  (Dkt. 8-2, Pg ID 46).  The ALJ found that plaintiff had the residual functional capacity to perform less than the full range of light work as defined, he could lift and carry ten to fifteen pounds at the waist level only and not more frequently than three to four times an hour; and he could occasionally push and pull and perform work above shoulder level.  The ALJ further found that plaintiff was limited to simple, repetitive tasks.  (Dkt. 8-2, Pg ID 47).  The ALJ concluded, based on the vocational expert testimony, that plaintiff could not perform his past work and could not perform a full range of light work because of additional limitations.  According to the ALJ's decision,

> to determine the extent to which these limitations erode
> the unskilled light occupational base, through the date
> last insured, the Administrative Law Judge asked the
> vocational expert whether jobs existed in the national
> economy for an individual with the claimant's age,

> education, work experience, and residual functional
> capacity.  The vocational expert testified that given all of
> these factors the individual would have been able to
> perform the requirements of representative occupations
> such as assembler with 8,000 jobs in the State of
> Michigan economy; inspector with 5,000 jobs in the
> State of Michigan economy and packer with 8,000 jobs
> in the State of Michigan economy.  In addition, the
> vocational expert testified that there are 50,000
> sedentary, unskilled jobs in that region that the claimant
> could perform that would accommodate the restrictions
> in the residual functional capacity.

(Dkt. 8-2, Pg ID 58).  Turning to the actual record testimony, some of it is

inaudible, but it appears that the vocational expert testified that the jobs identified

above were actually all sedentary jobs, given the limitations in the hypothetical

posed (lift and carry 10-15 pounds at waist level only and not more than 3-4 times

per hour, occasionally push, pull and work above shoulder level).  (Dkt. 8-2, Pg ID

85-86).  As far as accommodating the mental limitations identified in the RFC, the

vocational expert testimony is again, partially inaudible.  It appears that the VE

testified that the answers given about jobs available in the economy would not

change if plaintiff were limited to simple, rote tasks.  (Dkt. 8-2, Pg ID 87).

Plaintiff asserts that there is not substantial evidence to support the ALJ's

finding that he could perform work as an assembler, inspector and packer because

of the documented difficulty with his right hand.  In the view of the undersigned,

there was insufficient evidence to support any significant limitation with

plaintiff's hand.  While a tremor was noted, he had normal flexion, extension, and grip strength, and no manipulative impairments were established.  (Dkt. 8-8, 343-344; Dkt. 8-9, Pg ID 352).  Even Dr. Cooley did not identify any manipulative impairments.  (Dkt. 8-9, Pg ID 370-373).  *See Maher v. Sec'y of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir.1987), citing *Nunn v. Bowen*, 828 F.2d 1140, 1145 (6th Cir.1987) ("lack of physical restrictions constitutes substantial evidence for a finding of non-disability.").  Plaintiff also says that he would be absent from work more than 2-3 days per month, which is work preclusive.  However, plaintiff points to no record evidence to support this claim and not even Dr. Cooley offered an opinion on this issue.  (Dkt. 8-9, Pg ID 373).

Plaintiff also objects to the hypothetical question posed to the vocational expert because it did failed to mention his documented neck motion limitations.  While Dr. Cooley opined that plaintiff could never look down, never turn his head right or left, never look up, and never hold his head in a static position, there is little support for such extreme limitations in the record.  The ALJ properly rejected Dr. Cooley's opinions, given the lack of consistent medical evidence to support them.  The ALJ extensively explained how he weighed the inconsistent medical evidence and why he did not give controlling weight to Dr. Cooley's opinions.  Dr. Cooley's rather extreme opinions were not supported by the medical evidence or his own treatment records and conflicted with the majority of other medical

opinions offered.  The ALJ's conclusions are supported by substantial evidence in the record.  To conclude otherwise would require the undersigned engage in a re-weighing of the medical evidence, which is not appropriate on judicial review. Plaintiff points to no other evidence in the record to support specific neck motion limitations imposed or suggested by any physician, treating or consulting.

In addition, plaintiff contends that the ALJ made a finding that he had moderate difficulties in concentration, persistence, or pace, but failed to adequately account for this limitation in the hypothetical question.  The essential question here is whether the ALJ's conclusion that plaintiff was limited to unskilled work and "simple, rote" tasks sufficiently accommodated the ALJ's finding that plaintiff had moderate difficulties in concentration, persistence, or pace.  This issue has been addressed innumerable times in this District, as noted by Magistrate Judge Laurie Michelson, in *Hicks v. Comm'r*, 2011 WL 6000714 (E.D. Mich. 2011), adopted by 2011 WL 6000701 (E.D. Mich. 2011) (Roberts, J.).  The undersigned agrees with Judge Michelson that a hypothetical simply limiting a claimant to "simple routine tasks" may, in some instances, fail to capture a claimant's moderate limitation in "concentration, persistence, or pace" because the difficulty of a task is not equivalent to the difficulty of staying on task.  *Id.*, citing *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich. 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of

the time at work. Thus, 'moderate' concentration problems ... need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 .... Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient."); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."). Yet, other cases seemingly conclude otherwise. *See e.g.*, *Bohn–Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005) (finding that "unskilled" work limitation in RFC was sufficient to account for ALJ's PRTF finding that claimant "often" experiences CPP issues); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at *3 (E.D. Mich. 2010) ("There may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks. Plaintiff does not, however, explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.").

Judge Michelson explained an important reason the outcomes of these seemingly similar cases are often so different. The seemingly contradictory cases within this District that do not remand for the ALJ to include a moderate concentration, persistence, or pace limitation were distinguishable because a medical professional had made a specific finding that the claimant had moderate

difficulties in concentration, persistence, or pace, but could still work on a sustained basis. *Hicks*, 2011 WL 6000701, *4. Judge Michelson distinguished the cases where a medical professional found moderate difficulties in concentration, persistence, or pace, from cases like *Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842 (E.D. Mich. 2007) and the facts of *Hicks*, where the ALJ (rather than a medical professional) made the finding of moderate limitations in concentration, persistence, or pace. This case is just like *Benton* and *Hicks*, where the ALJ made a finding of moderate limitations in concentration, persistence, or pace, but did not have a medical opinion finding a moderate limitation in concentration, persistence, or pace and which indicated that the plaintiff was still capable of sustained work. Thus, the hypothetical question in this case, just like that in *Benton* and *Hicks* was flawed and did not properly account for plaintiff's moderate limitation in concentration, persistence, or pace. For this reason, this matter should be remanded so that the ALJ can "adequately account for his determination that Plaintiff had 'moderate' difficulties in 'concentration, persistence, or pace' in his RFC and additional VE testimony if necessary." *Hicks*, 2011 WL 6000701, *4. In addition, the undersigned suggests that the ALJ clarify whether the VE testimony supports an RFC for only sedentary work or a limited range of light work.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

Report and Recommendation
Cross-Motions for Summary Judgment
*Cwik v. Comm'r*; Case No. 10-15121

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  February 23, 2012

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 23, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Kenneth F. Laritz, Judith E. Levy, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Cwik v. Comm'r*; Case No. 10-15121